UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Kimberly A. Ackerman,   Case No. 23-22510-beh

Debtor.   Chapter 13

**DECISION AND ORDER OVERRULING CARRINGTON MORTGAGE SERVICES, LLC'S OBJECTION TO CONFIRMATION**

Carrington Mortgage Services, LLC, objects to confirmation of debtor Kimberly Ackerman's Chapter 13 plan, contending that Mrs. Ackerman must pay its claim based on a reverse mortgage in full because the entire loan came due prepetition after the death of her husband. Mrs. Ackerman responds that Carrington did not call the loan due prepetition, and, as a non-borrowing spouse, she may employ the "cure and maintain" provision of 11 U.S.C. § 1322(b)(5) and pay only the prepetition arrearage on the claim through her Chapter 13 plan. As explained below, because the last payment on Carrington's claim is due after the final payment under Mrs. Ackerman's plan, she is not required to pay the claim in full, and the objection is overruled.

### BACKGROUND

This objection to confirmation arises in Kimberly Ackerman's second Chapter 13 bankruptcy case filed since 2020. The first case, Case No. 20-20121-beh, was filed with her husband, John Ackerman. The Ackermans each received a Chapter 13 discharge on April 25, 2023. Sadly, Mr. Ackerman died two days later, on April 27, 2023. ECF No. 26, at 1.

Several years earlier, on October 16, 2016, both Ackermans had signed a home equity conversion mortgage on their home (*see* Claim No. 3-2, at 32), while only Mr. Ackerman (the decedent) had executed the underlying note (*see id.* at 19). The note and mortgage subsequently were assigned to Carrington Mortgage Services, LLC. During the Ackermans' first case, Carrington had

obtained relief from the automatic stay based on the Ackermans' default in paying their real estate taxes on their homestead. *See* Case No. 20-20121-beh, ECF Nos. 33, 43, 45.

Mrs. Ackerman filed this second case on June 1, 2023, in an effort to retain the homestead. She filed her Chapter 13 plan that same day, which proposes to cure a $20,762 prepetition arrearage owed to Carrington by making monthly payments to the trustee for a period of 60 months. ECF No. 2, at 3. Her plan also proposes to pay certain real estate tax arrears to the taxing authority, *id.* at 4, and she has budgeted a monthly expense for the on-going taxes, ECF No. 1, at 34.

Mrs. Ackerman had notified Carrington of her husband's death, and so on May 12, 2023, shortly before she filed her bankruptcy petition, Carrington sent her a "Non-Borrowing Spouse Certification" for her to complete and return. ECF No. 33. The document required her to complete and return the certification no later than June 6, 2023. *Id.* Mrs. Ackerman signed the certification for deferral on June 1, 2023, at some point after she filed this case. *Id.*; ECF Doc. No. 37, at 2. That document stated:

> Dear KIMBERLY ACKERMAN:
>
> In order to maintain the protections offered to you related to this reverse mortgage in the event of the HECM[1] borrowers [sic] death, you must complete and return this certification.
>
> **Please sign this form and return it to us . . . . Failure to do so may result in the loss of your protection under this reverse mortgage and the loan may be called due and payable.**
>
> - I hereby certify that I was married to . . . JOHN F ACKERMAN a HECM mortgagor, and the information provided about me is true and correct.
> - I understand that my spouses [sic] HECM loan contains a deferral of a due and payable status to prevent my displacement from the property following the death of the last surviving mortgagor under my spouses [sic] HECM only if:
>
>   . . .
>
> - I continue to occupy the property securing my spouses [sic] HECM as my principal residence;

---

[1] HECM stands for Home Equity Conversion Mortgage.

- All my other obligations as the HECM mortgagor continue to be satisfied after the death of the last surviving mortgagor, . . . and
- All other terms and conditions of the HECM continue to be satisfied after my death.[2]

ECF No. 33 (emphasis in original).

One week later, on June 9, 2023, Carrington sent Mrs. Ackerman correspondence titled "Non-Borrowing Spouse Deferral Period – Revoked." ECF No. 36-1, at 1. The letter stated:

> The Reverse Mortgage Servicing Department has completed its review of the documents you provided to us so we could determine your eligibility to continue to participate in the Department of Housing and Urban Development's (HUD) Non-Borrowing Spouse (NBS) Due and Payable Deferral Period, as described in letters we have previously sent you. Unfortunately, you did not satisfy the requirements to keep the Due and Payable Deferral Period for the above-referenced HECM loan. Please read this letter to determine what requirement(s) was/were not fulfilled, causing your eligibility to be revoked.

*Id.* The letter continued: "The HECM loan remains in default due to unpaid property charges, taxes, and/or hazard insurance." *Id.*

On November 6, 2023, the Chapter 13 trustee recommended confirmation of Mrs. Ackerman's plan. ECF No. 25. Later that same day, Carrington filed an objection to its treatment under the plan. ECF No. 26 (citing 11 U.S.C. § 1325(a)(5)(A)). Pointing to the order lifting the stay in the Ackermans' prior case and certain terms of the reverse mortgage and note, Carrington argues that the entire amount of the debt became due prepetition and therefore Mrs. Ackerman cannot "cure and maintain" the debt under 11 U.S.C. § 1322(b)(5). ECF No. 36, at 1. Instead, Carrington asserts, Mrs. Ackerman must pay the full balance due over the course of her Chapter 13 plan. Carrington amended its proof of claim to reflect a total amount due of $260,342.80. Claim No. 3-2.

Mrs. Ackerman responds that Carrington has not yet called the note due, and because § 1322(b)(5) allows her to cure the prepetition default and

---

[2] This last statement does not appear to apply to Mrs. Ackerman, as she is not capable of certifying that other terms and conditions of the HECM continue to be satisfied after *her* death.

maintain other ongoing contractual obligations, her plan treatment is permissible.

The parties read the underlying note and mortgage differently in support of their respective positions. Pertinent portions of the note provide:

> **1. DEFINITIONS**
> . . .
> "Eligible Non-Borrowing Spouse" means a Non-Borrowing Spouse[3] who meets, and continues to meet, the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.
> . . .
> "Ineligible Non-Borrowing Spouse" means a Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.
> . . .
> "Qualifying Attributes" means those requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.[4]
>
> "Secretary" means the Secretary of Housing and Urban Development or his or her authorized [sic]

---

[3] Debtor Kimberly A. Ackerman is identified in the note and mortgage as the "Non-Borrowing Spouse." Claim No. 3-2, at 14, 24.

[4] Those requirements currently are set forth in 24 CFR § 206.55:

> (c) Qualifying Attributes.
>
> (1) In order to qualify as an Eligible Non-Borrowing Spouse, the Non-Borrowing Spouse must:
>
> (i) Have been the spouse of a HECM borrower at the time of loan closing and remained the spouse of such HECM borrower for the duration of the HECM borrower's lifetime;
>
> (ii) Have been properly disclosed to the mortgagee at origination and specifically named as an Eligible Non–Borrowing Spouse in the HECM mortgage and loan documents;
>
> (iii) Have occupied, and continue to occupy, the property securing the HECM as his or her principal residence; and
>
> (iv) Meet any other requirements as the Commissioner may prescribe by Federal Register notice for comment.

24 CFR § 206.55(c)(1) (effective September 19, 2017). At the time the Ackermans signed the mortgage, the applicable requirements were set forth in HUD Mortgagee Letter 2014-07, and included qualifications (i) through (iii) above. *See* U.S. Dep't of Hous. & Urban Dev., Mortgage Letter No. 14-07, *Home Equity Conversion Mortgage (HECM) Program: Non-Borrowing Spouse*, at 5 (April 24, 2014), https://www.hud.gov/sites/documents/14-07ml.pdf.

. . .

**2. BORROWER'S PROMISE TO PAY; INTEREST**

. . . All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on November 25, 2100. . . .

. . .

**4. MANNER OF PAYMENT**

    **(A) Time.**

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

. . .

**7. IMMEDIATE PAYMENT-IN-FULL**

    **(A) Death**

(i) Except as provided in Paragraph 7(A)(ii), Lender may require immediate payment in full of all outstanding principal and accrued interest if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

(ii) Deferral of Due and Payable Status. Lender may not require immediate payment in full of all outstanding principal and accrued interest if a Non-Borrowing Spouse identified in this Note qualifies as an Eligible Non-Borrowing Spouse and provided the following conditions are, and continue to be, met:

    a. Such Eligible Non-Borrowing Spouse remained the spouse of the Borrower, identified in this Note, for the duration of the Borrower's lifetime;

    b. Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy, the Property as [his/her] Principal Residence;

    c. Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;

    d. All other obligations of the Borrower under this Note, the Loan Agreement and the Security Instrument continue to be satisfied; and

    e. This Note is not eligible to be called due and payable for any other reason.

This sub-paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met, such a deferral shall immediately cease and this

> Note will become immediately due and payable in accordance with the provisions of Paragraph 7(A)(i) of this Note.[5]

Claim No. 3-2, at 14–18.

Finally, Paragraph 13 of the mortgage provides:

> **13. Deferral Period Reinstatement.** If a Deferral Period ceases or becomes unavailable because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has become an Ineligible Non-Borrowing Spouse, neither the Deferral Period nor the Security Instrument may be reinstated. In the event a Deferral Period ceases because an obligation of the Note, the Loan Agreement, or this Security Instrument has not been met or the Note has become eligible to be called due and payable and is in default for a reason other than death, an Eligible Non-Borrowing Spouse may have a Deferral Period and this Security Instrument reinstated provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days, or such longer period as may be required by applicable law. . . .

*Id.* at 27.

To summarize: If the borrower (Mr. Ackerman) dies, and his surviving non-borrowing spouse (Mrs. Ackerman) meets the "Qualifying Attributes" to be an "Eligible Non-Borrowing Spouse," then upon his death, the due and payable status of the loan must be deferred, provided that Mrs. Ackerman (1) maintains her eligibility qualifications (i.e., does not become an "Ineligible Non-Borrowing Spouse"), and (2) satisfies additional conditions. If she becomes an "Ineligible Non-Borrowing Spouse"—for example, by no longer using the property as her principal residence—then the deferral period and mortgage are immediately terminated and may not be reinstated. If Mrs. Ackerman remains an "Eligible Non-Borrowing Spouse" but fails to satisfy *other conditions* for a deferral, then there is an opportunity to cure the default and the deferral period can be reinstated.

Both parties consider this matter to present only questions of law, and that no additional factual record is required for the Court to decide the matter.

---

[5] Paragraph 10(a) of the mortgage substantially mirrors paragraph 7(a) of the note, with the introductory section of paragraph 10(a)(ii) of the mortgage slightly reworded as follows: "Lender shall defer the due and payable requirement under Paragraph 10(a)(i) above for any period of time ('Deferral Period') in which a Non-Borrowing Spouse identified in Paragraph 9 qualifies as an Eligible Non-Borrowing Spouse and certifies all of the following conditions are, and continue to be, met . . . ." *Id.* at 24–25.

## ANALYSIS

The Codes sections on which each of the parties rely differ primarily based on when the last payment under the loan is or was due.

Section 1322(b)(2), subject to § 1322(a) and (c), permits a Chapter 13 plan to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* . . . ." 11 U.S.C. § 1322(b)(2) (emphasis added). The latter portion of the statute, which prohibits modifications of homestead mortgage loans like Carrington's loan here, is known as the "anti-modification clause." There are two significant limitations to the reach of the clause, however.

First, section 1322(b)(5), "notwithstanding [§1322(b)(2)]," allows for a plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due." So, when a debtor's outstanding homestead mortgage is not due to be paid off until after completion of her plan and she has defaulted on payments prepetition, her plan may allow her to catch up on the arrears while maintaining current obligations—the "cure and maintain" exception.

Second, section 1322(c)(2), also "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law," allows modifications to home mortgage loans that are short-term—i.e., when "the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due." 11 U.S.C. § 1322(c)(2). When this exception applies, "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title." *Id.* Section 1325(a)(5), in turn, allows a debtor to pay the value of the secured claim in installment payments over the life of the plan, or to surrender the underlying property (unless the creditor accepts a different treatment).

For Mrs. Ackerman, the difference between treating Carrington's claim under section 1322(b)(5) and section 1322(c)(2) is significant—almost $240,000

($20,762 in arrears paid over five years, versus the entire balance of $260,342.80 paid over five years).[6]

In determining which exception to section 1322(b)(2) Mrs. Ackerman may invoke, the Court must ascertain whether the last payment on Carrington's claim is due before or after her last Chapter 13 plan payment. The relevant date for this determination is the date on which the last payment is due under the terms of the original note and mortgage, and not after an acceleration has occurred. *In re Clark*, 738 F.2d 869, 874 (7th Cir. 1984). To the extent the parties address the actual terms of the note and mortgage, their interpretations differ. Consequently, they disagree on when the last payment is (or was) due, and thus whether treatment of Carrington's claim under section 1322(b)(5) is permissible.

Carrington argues that the loan was due and payable in full prepetition— specifically, upon Mr. Ackerman's death. The basis for this conclusion is not entirely consistent. In its briefing, Carrington acknowledges that it must defer payment in full of the entire debt if Mrs. Ackerman qualifies as an "eligible non-borrowing spouse." *See* ECF No. 36, at 1. It likewise does not dispute that she meets the "Qualifying Attributes" required to be an "Eligible Non-Borrowing Spouse" within the meaning of the note and mortgage and applicable regulations (or that she satisfies the first three conditions of paragraph 7(a)(ii) of the note and paragraph 10(a)(ii) of the mortgage).

Nevertheless, Carrington seems to contend that Mrs. Ackerman became an "Ineligible Non-Borrowing Spouse" based on her failure to cure the tax arrearage. *See id.* (referring to Mrs. Ackerman's lack of compliance with the condition of paragraph 7(a)(ii)(d) of the note and paragraph 10(a)(ii)(d) of the mortgage that "[a]ll other obligations of the Borrower" remain satisfied, and then quoting paragraph 13 of the mortgage, with emphasis on the provision that if an Eligible Non-Borrowing Spouse becomes an Ineligible Non-Borrowing

---

[6] Because the value of the property, according to Mrs. Ackerman's schedules, is greater than the amount owed to Carrington, she is unable to "cram down" the secured claim to an amount less than the full balance of the debt under section 1325(a)(5)(B).

Spouse, "neither the Deferral Period nor the Security Instrument may be reinstated"). This argument, if it is indeed Carrington's position, conflates the "Qualifying Attributes" for initial eligibility of the deferral period with the additional conditions for maintaining deferral.[7]

Carrington made a slightly different argument at a hearing on the matter—that the full amount of the loan became due and payable upon Mr. Ackerman's death, regardless of whether the property taxes were current:

> There is a provision [in the note/mortgage] that allows for the nonborrowing spouse to take advantage of a deferral period, assuming that all other obligations under the note and mortgage have been made, which the debtor did fill out, however . . . the certification wasn't accurate. The account was delinquent due to taxes in the previous bankruptcy, which the debtor was a part of, so my client was not able to provide that deferral that the debtor would otherwise be entitled to. And considering the death of the actual borrower himself, the entirety of the note and mortgage was called immediately due and payable prior to the filing of the bankruptcy. It would have been upon the death of the borrower, even if the outstanding taxes had been cured previously, and since the entirety of the note was called due and payable prior to the filing of the bankruptcy, my client is entitled to the full debt at this time.

ECF No. 38 (audio recording). This argument sidesteps the language of the relevant note and mortgage provisions—specifically, those concerning the deferral period for an eligible non-borrowing spouse.

Finally, Carrington asserted (again at oral argument) that because the loan is not a typical homestead mortgage, but a reverse mortgage regulated by the Consumer Financial Protection Bureau, "it is not just as simple as interpreting what the document says." *Id.* Carrington did not, however, identify which federal restrictions could apply here to thwart the debtor's options under § 1322(b)(5).

---

[7] Carrington also suggests that the note was accelerated prepetition under paragraph 10(c)(iii) of the mortgage due to Mr. Ackerman's failure to maintain property taxes, *see* ECF No. 36, at 1. But that paragraph of the mortgage provides for acceleration of the due and payable status after a contractual default *only upon approval of the Secretary of HUD*. Carrington has provided no evidence that HUD approved acceleration of the note and, in any event, this type of default is distinct from a maturity-triggering event and does not fix the last payment date of the note, as discussed *infra*.

In response, Mrs. Ackerman contends that the last payment to Carrington is due after the plan term ends but does not identify a specific date of loan maturity. Her primary argument is that Carrington has not yet called the loan due. She reads Paragraph 7(a) of the note and paragraph 10(a) of the mortgage to require Carrington to take some further (unspecified) step before calling the note due and payable, primarily because of the verb form "may." ECF No. 37, at 2. She cites only a dictionary definition of "may" to support her view that the term "may require" reflects a future possibility, and not an absolute or immediate consequence.[8]

Mrs. Ackerman further argues that the order of relief arising June 1, 2023, when she filed her bankruptcy case paused any collection action by Carrington, including any steps to call the note due. As a result, she says, her plan may propose to cure and maintain payments and other obligations due under the note in a manner consistent with 11 U.S.C. §§ 1322(b)(5) and 1325(a)(5). ECF No. 37, at 3–4.[9]

---

[8] This argument is not persuasive. While Wisconsin courts generally view the term "may" to be permissive when interpreting the use of the verb in a contract, *see, e.g., Saft America, Inc. v. Precision Drawn Metals, Inc.*, (W.D. Wis. 2022) (citing *Heritage Farms, Inc. v Markle Ins. Co.*, 2012 WI 26, ¶ 32), there are circumstances where the generally permissive cast of the word "may" will be overcome by mandatory terms elsewhere in the document. *See, e.g., Beilfuss v. Huffy Corp.*, 2004 WI App 118, ¶8, 274 Wis. 2d 500, 685 N.W.2d 373. Notably, the note and mortgage similarly state that the lender "may" require immediate payment in full upon the death of the borrower (when there is no eligible non-borrowing spouse) and upon the sale of the property—both of which are, as will be later discussed, maturity-triggering events.

[9] Mrs. Ackerman consequently characterizes the revocation letter that Carrington sent her on June 9, 2023, as a "nullity," citing *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984) ("Orders issued in violation of the automatic stay provisions of the bankruptcy code . . . ordinarily are void."). But she does not describe any resulting harm from this alleged stay violation, and neither party offered any caselaw describing the rights of an eligible non-borrowing spouse under the note and mortgage. The Court therefore need not consider whether any stay violation took place.

In her brief, Mrs. Ackerman further suggested that Carrington had challenged the notion that she could include Carrington in her plan at all, citing *In re Higgins*, Case No. 23-22024-RMB, 2023 WL 8823920 (Bankr. E.D. Wis. Dec. 20, 2023), *In re Berry*, 649 B.R. 319 (Bankr. E.D. Wis. 2023), and *In re Sandoval*, 640 B.R. 165 (Bankr. E.D. Wis. 2022). ECF No. 37, at 2 n.1. But Carrington's counsel later clarified that the creditor does not contest that Mrs. Ackerman is the current owner of the property and a non-borrowing spouse and agrees that she has a right to remit payment on the loan.

Alternatively, Mrs. Ackerman argues that even if the note had been called due (or accelerated) before she filed her bankruptcy petition, "Chapter 13 debtors are specifically authorized to reverse those actions by secured creditors in their plans through the 'cure and maintain' provision of § 1322(b)(5)." ECF No. 37, at 3. She cites *Clark*, 738 F.2d at 874, for its instruction that "the power to 'cure' a default provided by § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage."

Neither Carrington nor the debtor fully address the language of the note/mortgage in advancing their respective positions. As with all questions of contract interpretation, however, that is where the Court must begin. *See In re Sandoval*, 640 B.R. 165, 174–75 & n.5 (Bankr. E.D. Wis. 2022) (interpreting terms of note and reverse mortgage under Wisconsin law); *Harris v. Metropolitan Mall,* 112 Wis.2d 487, 496 (1983) (under Wisconsin principles of contract interpretation, "'instruments executed at the same time between the same contracting parties in the course of the same transaction will be construed together'") (quoting *Wipfli v. Bever,* 37 Wis.2d 324, 326 (1967)). The only date certain provided in the note and mortgage is November 25, 2100. Claim No. 3-2, at 15, 22. The question is, what did the parties intend that date to signify?

In *Sandoval*, the bankruptcy court faced a similar question: what is the date of the "last payment on the original payment schedule" of a reverse mortgage with a listed maturity date of December 9, 2081 (when the borrower would have turned 150 years of age)? In reviewing the note terms along with the relevant statutes and regulations in force when it was executed—including HUD regulations and handbooks for home equity conversion mortgages—the *Sandoval* court reasoned that the parties included a maturity date in the note to satisfy some actual or perceived state law requirement, but that they did not intend or expect that the debt would be repaid then. *Id.* at 177. Instead, "[t]he objectively manifested intent of the parties to the note and mortgage was that

the debt would be repaid upon the borrower's death or the sale of the mortgaged property." *Id.* at 175. Because the borrower (the debtor's mother) had died prepetition, the loan had matured according to its own terms and the debtor could modify the creditor's claim under section 1322(c)(2).[10] *Id. See also, e.g., In re Godwyn,* 651 B.R. 669, 674 (Bankr. E.D. N.C. 2023) ("The prepetition acceleration of the Note balance triggered by the death of the non-bankruptcy debtor-borrower forced the indebtedness 'last payment' to become due prepetition."); *In re Wilcox,* 209 B.R. 181, 182–83 (Bankr. E.D.N.Y. 1996) (same).

While *Sandoval, Godwyn,* and *Wilcox* may seem to support Carrington's position that the loan here matured upon Mr. Ackerman's death, the support is only partial. None of those courts—nor any other bankruptcy court, as far as this Court can ascertain—were asked to consider how eligibility requirements for a non-borrowing spouse might extend the date on which the last payment is due under a reverse mortgage.

Critically, *Sandoval* distinguished between true defaults, which allow for acceleration of a debt, and maturity-triggering events, which fix, rather than accelerate, the repayment date of a debt. Its discussion on this point ultimately erodes, rather than braces, Carrington's position. In *Sandoval,* the court rejected the creditor's argument that the borrower's death was "an unresolvable default" that merely accelerated the debt (rather than a maturity-fixing event), explaining:

> This approach disregards the plain meaning of "default", which is "[t]he omission or failure to perform a legal or contractual duty". *Black's Law Dictionary* 526 (11th ed. 2019); see also *Webster's Third New International Dictionary* 590 (defining "default" in relevant part as a verb meaning "to fail to fulfill a contract or agreement . . . or to perform a duty" or "to fail to perform, pay, or make good"). And Reverse Mortgage's conflation of all such events is untenable given the terms of the note and mortgage, which clearly single out true defaults, providing for acceleration, though only with HUD's approval, if "[a]n obligation of the

---

[10] The debtor in *Sandoval* did not seek to treat the mortgage lender's claim under section 1322(b)(5).

> Borrower under [the mortgage] is not performed." Claim No. 2, at 10 & 16.
>
> The borrower's death did not breach or leave unperformed any obligation under the mortgage; it was an anticipated outcome by which the debt matured. The intention of the parties, as objectively manifested in the note and mortgage, was that the death of the borrower (or the sale of the property) would *fix* the maturity of the debt, not *accelerate* it. In other words, the parties to the note and mortgage intended and expected that the debt would be repaid when the borrower died (or the property was sold). When that happened, the due date of "the last payment under the original payment schedule", which had been contingent, was fixed.

640 B.R. at 179 (internal citations omitted). *See also In re Michaud*, 548 B.R. 582, 584 (Bankr. S.D. Fla. 2016) ("The death of the borrower is the predicted event at the heart of a reverse mortgage; it is not the same as a borrower defaulting under the terms of the reverse mortgage, for example, by failing to maintain insurance on the property. This Court would not apply § 1322(c) to a reverse mortgage that is accelerated by a debtor's default in performing an obligation of that type.").

Here, an examination of the terms of the Carrington note and mortgage leads the Court to conclude that the parties intended the reverse mortgage to be repaid upon the occurrence of one of two events: (1) the later of either (a) the death of the borrower or (b) the death (or ineligibility) of the eligible non-borrowing spouse; or (2) the sale of the property.

Paragraph 7(a)(i) of the note and paragraph 10(a)(i) of the mortgage require that the debt be due and payable upon the death of the borrower (like the note and mortgage in *Sandoval*) but incorporate a significant exception: subparagraph (ii)'s option for deferral of that status until the death of an "Eligible Non-Borrowing Spouse" (or until the spouse no longer fits that definition). Because Mrs. Ackerman qualified as an "Eligible Non-Borrowing Spouse" at the time of her husband's death, the deferral period was available to her. Although she remained in default under a separate *condition* of the note and mortgage, the documents reflect that the parties did not intend for this to be a maturity-triggering event, but rather (merely) a "true default" allowing for

acceleration of the debt. The lack of mandatory language concerning this type of default (as opposed to becoming an "Ineligible Non-Borrowing Spouse" or selling the property, for example) is telling. *See, e.g.,* paragraph 7(A)(ii) of the note (rendering the paragraph allowing the deferral period "inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time"), paragraph 7(B) of the note (prohibiting a deferral of due and payable status when a lender requires immediate payment due to the sale of the property), and paragraph 13 of the mortgage (prohibiting the reinstatement of a deferral period or the mortgage itself if the deferral period ceases or becomes unavailable "because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has become an Ineligible Non-Borrowing Spouse").

And the mortgage itself allows for a reinstatement of a deferral period that has ceased due to an eligible non-borrowing spouse's failure to meet an obligation/condition of the mortgage (like paying property taxes), "provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days, or such longer period as may be required by applicable law." Applicable law includes bankruptcy law—and specifically section 1322(b)(5). *See Clark*, 738 F.2d at 874.

This reading is consistent with the underlying regulatory scheme governing HECMs. Even though the Court deems the relevant provisions of the note and mortgage to be plain, it can consider any relevant statutes and regulations in force when the contract was made. *See Sandoval,* 640 B.R. at 175 ("[I]n general, the laws in existence at the time of the contract are incorporated into that contract."). Carrington does not dispute that the mortgage securing its claim is a "home equity conversion mortgage" within the meaning of 12 U.S.C. § 1715z-20 (authorizing HUD to provide insurance to private lenders who offer qualifying reverse mortgages to elderly homeowners).

*See* Claim No. 3-2, at 18 (referring to section 255 of the National Housing Act, which is codified as amended at 12 U.S.C. § 1715z-20).[11]

In 2014, after legal challenges to HUD's regulations as being inconsistent with 12 U.S.C. § 1715z-20, the agency took action to give effect to the statute's intent of preventing displacement not only of borrowers, but of their surviving spouses. The result of these regulatory changes—including creation of a deferral period for eligible non-borrowing spouses—was to "postpone[] a reverse mortgage's due and payable status (and subsequent foreclosure) until the death of the last eligible non-borrowing spouse." *Reverse Mortg. Sols., Inc. v. United States Dep't of Hous. & Urb. Dev.*, 365 F. Supp. 3d 931, 937 (N.D. Ill. 2019) (citing HUD Mortgagee Letter 2014-07 (April 24, 2014); 24 C.F.R. §§ 206.27(c), 206.55 (effective September 19, 2017)). This purpose is underscored by the obligatory nature of being designated an "Eligible Non-Borrowing Spouse" (and thus a recipient of a deferral period, until otherwise unavailable). *See* 24 C.F.R. § 206.55(c)(2) ("A Non-Borrowing Spouse who meets the Qualifying Attributes in paragraph (c)(1) of this section at origination is an Eligible Non-Borrowing Spouse *and may not elect to be ineligible for the Deferral Period*.") (emphasis added).

In sum, because the loan did not mature due to Mr. Ackerman's death or the failure to maintain property taxes (and will not come due on its own terms before 2100, absent the sale of the property, Mrs. Ackerman becoming an "ineligible" non-borrowing spouse, or Mrs. Ackerman's death), Mrs. Ackerman can pay Carrington's claim under section 1322(b)(5) as one on which "the last payment is due after the date on which the final payment under the plan is due."

---

[11] Although federal law is instructive in construing the note and mortgage here, it cannot be used to supersede contrary contractual terms. *Compare Est. of Jones v. Live Well Fin., Inc.*, 902 F.3d 1337, 1342 (11th Cir. 2018) ("Section 1715z-20(j) says nothing about private contractual obligations one way or the other, and thus cannot be read to alter or affect the enforceability of the mortgage contract or its terms."); *In re D'Alessio*, 587 B.R. 211, 218 (Bankr. D. Mass. 2018) (same).

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that Carrington Mortgage Services, LLC's objection to confirmation is overruled.

The Court will enter a separate order confirming the debtor's Chapter 13 plan.

Dated: May 1, 2024

By the Court:

Beth E. Hanan
United States Bankruptcy Judge